**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE:

LAWRENCE ALLEN DEES &                                    CASE NO.:  05-32545-LMK
SYLVIA HOLYFIELD DEES,

  Debtors.                                               CHAPTER:  7
_____/

LAWRENCE ALLEN DEES &
SYLVIA HOLYFIELD DEES,

  Plaintiffs,

v.                                                      ADV. PROC. NO.:  06-03034-LMK

UNITED STATES OF AMERICA,

  Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR ABSTENTION

Defendant, the United States ("Government"), has moved for the Court to abstain (Doc. 10) in this adversary proceeding to determine the dischargeability of the Plaintiff-Debtors' potential tax liability under 11 U.S.C. §§ 523(a)(1), 507(a)(8), and 505. The issue is whether the Court should abstain from determining the dischargeability of taxes that have not yet been assessed in a fully-administered, no-asset, reopened Chapter 7 case when there are parallel proceedings pending in the Tax Court that will answer the dispositive question: namely, whether the taxes are assessable by virtue of agreements extending the statute of limitations executed on behalf of the Debtors. For the reasons stated herein, it is appropriate for the Court to abstain.

The Debtors filed their voluntary Chapter 7 petition on October 7, 2005. The estate had no assets (Doc. 6). The Debtors were granted a discharge on February 7, 2006, and the case was closed. On September 29, 2006, the IRS sent the Debtors a notice of deficiency for taxes owing for tax years 1988 through 1996 (the "Taxes"). The Court allowed the Debtors to reopen their bankruptcy

1

case on December 22, 2006 (Docs. 18 and 19) for the sole purpose of filing this adversary proceeding, which alleges that the statute of limitations has expired for assessment of the Taxes, or the Taxes were discharged in the Chapter 7 case. The Debtors have also filed a petition in the Tax Court with essentially the same allegations (Number 26566-06, filed December 26, 2006).

The Debtors' potential tax liability arose from their investment in partnerships with Walter Jay Hoyt, III ("Hoyt"). Similar partnerships, which involved thousands of investors, have been found to be illegal tax-sheltering schemes, and Hoyt has been convicted of conspiracy to commit fraud, bankruptcy fraud, and money laundering. *See, e.g., Meklusia v. Comm'r of Internal Revenue*, 389 F.3d 601, 601-02 (6th Cir. 2004). While he was under investigation for the partnerships, Hoyt, acting as "tax matters partner," executed agreements extending the statute of limitations for assessment of the Taxes on behalf of the Debtors ("extension agreements"). The Debtors contend that these extension agreements are void because a conflict of interest disabled Hoyt from executing them. The Government requests that the Court abstain from determining the extension agreements' validity.

Congress gave bankruptcy courts discretion when it empowered them to determine tax liability. *See* 11 U.S.C. § 505(a)(1) (stating that a bankruptcy court "**may** determine the amount or legality of any tax" (emphasis added)); *New Haven Projects Ltd. Liab. Co. v. City of New Haven (In re New Haven Projects Ltd. Liab. Co.)*, 225 F.3d 283, 288-89 (2d. Cir. 2000); *In the Matter of East Coast Brokers & Packers, Inc.*, 142 B.R. 499, 501-02 (Bankr. M.D. Fla. 1992). Courts have looked to a number of nonexhaustive factors to assist in deciding whether to abstain under § 505: whether bankruptcy issues predominate; the complexity of the tax issue; whether a bankruptcy purpose would be served; the need for orderly, efficient, and expeditious administration of the case; the legislative purpose of § 505; the length of time to resolve the matter; the burden on the docket; the asset and liability structure of the debtor; uniformity of assessment; potential prejudice to the debtor, taxing authority, and creditors; and other factors, such as judicial economy, fairness and conveni-

2

ence to litigants, and the simplicity of the nonbankruptcy issues. *See generally IRS v. Luongo (In the Matter of Luongo)*, 259 F.3d 323 (5th Cir. 2001); *Hinsley v. Harris County, Texas (In re Hinsley)*, 69 Fed.App. 658, *3 (5th Cir. 2003) (unpublished); *New Haven Projects Ltd. Liab. Co. v. City of New Haven (In re New Haven Projects Ltd. Liab. Co.)*, 225 F.3d 283, 288-89 (2d. Cir. 2000); *Gossman v. United States (In re Gossman)*, 206 B.R. 264, 266-67 (Bankr. N.D. Ga. 1997); *In re Diez*, 45 B.R. 137 (Bankr. S.D. Fla. 1984). In this case, there are five factors that lead to the conclusion abstention is appropriate.

First, this is a fully-administered, no-asset Chapter 7 case which was reopened for the sole purpose of contesting the Debtors' potential[1] tax liability. Though protecting a debtor's discharge could be a legitimate bankruptcy purpose under § 505, *see Luongo*, 259 F.3d at 330-31, many courts have concluded that abstention is generally appropriate in no-asset Chapter 7 cases since the distribution to creditors is not affected. *See, e.g., New Haven Projects*, 225 F.3d at 288-89 (concluding abstention was appropriate where there was *de minimis* unsecured debt and the tax redetermination would benefit only the debtor and its insiders to the detriment of the taxing entity and outside creditors); *In re Gossman*, 206 B.R. at 266-67 (stating that "[b]ankruptcy courts generally abstain from determining tax liability in no-asset chapter 7 cases," the court explained that the purposes of § 505 would be best served by abstention where the tax liability determination would not affect the bankruptcy estate or the distribution to creditors); *In re Diez*, 45 B.R. 137 (Bankr. S.D. Fla. 1984) (abstaining where the only creditor was the IRS and the debtor's sole purpose in filing her petition was to contest tax liability, the court noted that the purpose of § 505 is to afford creditors a forum for resolution of tax disputes which otherwise might delay conclusion of the administration of the bankruptcy estate). Here, there are no assets for the estate to administer for distribution to creditors, and the Debtors' discharge has not been offended because the Taxes have not yet been assessed.

---

[1] The IRS has not yet actually assessed the Taxes; rather, it sent the Debtors a notice of deficiency, which the Debtors are contesting.

3

Second, nonbankruptcy issues predominate. This adversary proceeding seeks to determine the dischargeability of the Debtors' potential liability for Taxes under 11 U.S.C. § 523(a)(1)(A). Section 523(a)(1)(A) provides that taxes of the kind described in 11 U.S.C. § 507(a)(8) are not discharged. Section 507(a)(8) describes, in relevant part, pre-petition income taxes assessable post-petition under applicable law or by agreement (with certain exceptions). *See* 11 U.S.C. § 507(a)(8)(iii). Since the dispositive question—whether the Taxes are assessable by virtue of the extension agreements—is determined by tax law, nonbankruptcy issues predominate. *See, e.g., Hinsley*, 69 Fed.App. 658 at *3 (unpublished) (concluding that abstention was appropriate because all bankruptcy issues had been resolved, and, moreover, the property the debtor sought to have valued in his motion for redetermination was not property of the estate); *cf. Luongo*, 259 F.3d at 330-31 (holding that the bankruptcy court properly exercised jurisdiction where the issues would be governed predominantly by bankruptcy law).

Third, the complexity of the dispositive tax question weighs in favor of abstention. Cases spawned by Hoyt's partnerships demonstrate that the tax questions likely to be raised in this proceeding are not well-settled. *See generally In re Leland*, 160 B.R. 834 (Bankr. E.D. Cal. 1993); *In re Miller*, 1993 WL 632255 (Bankr. E.D. Cal. 1993), *aff'd Miller v. IRS (In re Miller)*, 174 B.R. 791 (9th Cir. BAP 1994), *aff'd* 81 F.3d 169 (9th Cir. 1996) (rejecting the theory that the extension agreements could be invalidated solely due to the criminal investigation pending against Hoyt); *but see generally Phillips v. Commissioner of Internal Revenue*, 272 F.3d 1172 (9th Cir. 2002); *River City Ranches # 1 LTD. v. C.I.R.*, 401 F.3d 1136 (9th Cir. 2005); *Olcsvary v. United States (In re Olcsvary)*, 240 B.R. 264 (Bankr. E.D. Tenn. 1999), *aff'd*, 258 B.R. 885 (E.D. Tenn. 2001); *see also Transpac Drilling Venture v. Commissioner*, 147 F.3d 221 (2d. Cir. 1998) (appearing to accept the theory that the extension agreements could be void if evidence in addition to a mere criminal inves-

4

tigation showed that Hoyt was disabled from executing them by a conflict of interest).[2] The experience of other courts in similar cases indicates that the tax law governing the validity of the extension agreements is at least somewhat complex. *See Martinez v. United States (In re Martinez)*, 323 B.R. 650 (Bankr. E.D. La. 2005), *vacated by* 2005 WL 2065307 (E.D. La. 2005), *remanded to*, 341 B.R. 568 (Bankr. E.D. La. 2006), 2007 WL 1129376 (Bankr. E.D. La. 2007).

Fourth, it is not apparent, as the Debtors suggest, that the issues would necessarily be resolved more quickly in this Court than they would in the Tax Court. Of course, the Tax Court has more experience in tax matters. Plus, there are three levels of appellate review after this Court reaches a decision (the District Court, the Circuit Court, and the Supreme Court), while Tax Court decisions are appealable directly to the Circuit Court. *Compare* 28 U.S.C. § 158 *with* 26 U.S.C. § 7482. Any time saved in this Court would likely be spent on additional appeals.

Fifth, a forum with special expertise is available for resolution of this matter; indeed, the Debtors have already invoked its jurisdiction. *See* Tax Court Petition, Number 26566-06; *cf. Hospitality Ventures/Lavista v. Dekalb County (In re Hospitality Ventures/Lavista)*, 314 B.R. 843, 855-64 (Bankr. N.D. Ga. 2004) (concluding that abstention is not appropriate if the unavailability of an alternative forum precludes the debtor from obtaining relief). The Tax Court is a specialized court with expertise in the dispositive matters that will be raised in this proceeding. Deferring to specialized courts for resolution of matters within their expertise conserves judicial resources. *See generally Plum Run Service Corp. v. U.S. Dep't of Navy (In re Plum Run Service Corp.)*, 167 B.R. 460 (Bankr. S.D. Ohio 1994) (relying partly on the doctrine of primary jurisdiction, the court abstained under 11 U.S.C. § 1334(c)(1) from resolving a contract dispute between the debtor and the Department of Navy in deference to the greater expertise of the Armed Services Board of Contract Appeals); *Fyfe v. United States (In re Fyfe)*, 186 B.R. 290, 292 (Bankr. N.D. Ga. 1995) (holding that

---

[2] This Court does not take any position as to the legal rules or principles that will govern the validity of the extension agreements, instead abstaining in deference to the wisdom of the Tax Court.

abstention was appropriate because the debtor had not exhausted all administrative and legal remedies without first having to pay the claim). Judicial economy and respect for the system of Article I courts Congress has created suggest this Court should abstain. *See Matter of Huddleston*, 107 B.R. 102, 103 (Bankr. E.D. La. 1989) (stating, "[i]t is judicially economic for the tax liability questions involved in the instant case to be decided by the court whose job it is to do so" in a Chapter 11 case where a petition was pending in the Tax Court and there would be no prejudice to the debtors). The Tax Court is best positioned to resolve the dispositive issues in this case; plus, the Tax Court's opinion will likely make a valuable contribution to the body of tax law governing the issues in this proceeding.

This Court is simply the wrong tool in the jurisdictional toolbox for resolving the isolated tax question presented in the circumstances of this case. Resolving the dispositive question in this Court would be like using an ill-fitting screwdriver: it can be done, but not without expending more resources than necessary. It is more sensible to use the proper jurisdictional tool.

Finally, there is no reason for this Court to retain jurisdiction pending a determination from the Tax Court as to the validity of the extension agreements. If the extension agreements are valid, then the Taxes are assessable and therefore nondischargeable; if the extension agreements are void, then the Taxes are not assessable, and the Debtors would have no liability for the Taxes. *See* 11 U.S.C. §§ 523(a)(1) and 507(a)(8). For the above-stated reasons, it is hereby

ORDERED and ADJUDGED that the Defendant's Motion for Abstention (Doc. 10) is GRANTED, and this adversary proceeding is DISMISSED.

DONE and ORDERED in Tallahassee, Florida this 31st day of May, 2007.

LEWIS M. KILLIAN, JR.
United States Bankruptcy Judge

cc: All interested parties